Wakdlaw, Ch.,
dissenting.
If the will of Mary Ellis confer a separate estate in the slave Annie, on her daughter Mary Ann L., whether for life, or in fee, the question of the validity of the limitation over to the issue of the daughter, made by the first ground of appeal, involves merely the proper joinder of the plaintiffs in the suit, and becomes too unimportant for discussion. As to the third ground of *28 appeal, it is sufficient to remark, tliat, while I agree that tbe probate and registry of tbe will afford constructive notice to all persons, I adhere to tbe opinion expressed in Nix vs. Harley, 3 Rich. Eq. 383, that there is a difference between express and constructive notice as affecting the conscience of a defendant, and the remedy to be afforded by the Court. I agree, too, that under the facts of the case, the title to Annie must be determined by the interpretation of the third clause of testatrix’s'.will, unaffected by what is said in the fourth clause concerning Sydney. I dissent, however, from the judgment of the Court as to the matter of the second ground of appeal, that the terms of this third clause of the will give to the daughter a sole and separate estate in the slave Annie.
By this clause Annie and her future issue were bequeathed to the daughter, then unmarried, “ to be hers and hers only, during her natural life, and not to be subject to the debts of her husband or any other person.”
The general doctrine on this topic is well expressed by Chan. Dunkin, as the organ of the Court of Errors, in Wilson vs. Bailer, 3 Strob. Eq. 260. “ A separate interest in a married woman, is in derogation of the husband’s common-law right — the creature of the Court of Chancery — and unless the intention to exclude the husband is clearly expressed, or arises by necessary implication, the marital right is maintained. In this all the authorities concur.” And the Chancellor further adopts the phraseology of one of our cases • “ The expression of such intent should be plain, explicit and unequivocal,” else there will be a continual effort from slight expressions to imply this separate estate in the wife, leading to unceasing litigation. In Nix vs. Bradley, 6 Rich. Eq. 48, Chancellor Dargan arranges the modes of creating a separate estate in a wife into three classes: 1, where the technical words, sole and separate use, or others equivalent are used • 2, where the marital rights are expressly excluded: and 3, *29 where the wife is empowered to perform acts concerning the estate given to her, inconsistent with the legal disabilities of coverture. There the estate was given in trust for the use and benefit of the daughters of testator, (some of whom were married and some unmarried,) and “ not subject to the debts, contracts or sale of their present or future husbands,” and with the assent of the whole Court it was held to be a separate estate of the second class above mentioned. In the present case, if there be a separate estate it must be created likewise by the exclusion of the husband’s rights, for there is no pretence that technical words are used, nor that any special power of a feme sole was conferred on the daughter to be exercised when she should become a wife. It is clear and uncontested that the words in the bequest, “to be hers only,” do not by their single force exclude the husband’s rights. It has been often adjudged that a bequest to a wife, “ for her own use and benefit,” quite equal in force, do not give a separate estate to a wife: (Wills vs. Sayer, 4 Mad. 409; Roberts vs. Spicer, 5 Mad. 491,) although such words might have this effect, if followed by others excluding the husband’s control and enjoyment, such as “independent of the husband and in one case, (Margetts vs. Barringer, 7 Sim. 482,) the phrase “ independent of any other person” was treated as a euphemism for independent of the husband. In Tyler vs. Lake, 2 Rus. & Myl. 183, a legacy in trust for two married women, with direction to the trustees “to pay the moneys into their own proper, and respective hands, to and for their own use and benefit,” was held to be an absolute gift to the husbands through the wives; and a similar decision was made in our own case of Foster vs. Kerr, 4 Rich. Eq. 390, on a bequest of slaves to a wife, “ to her and the heirs of her body and to them alone." All words pointing towards the creation of a separate estate have diminished effect, (it has been matter of controversy whether they had any effect,) when the donee is unmarried at the time of gift; as a separate use *30 however well conveyed, operates only during coverture, and in restriction of tbe husband’s rights only, for a woman dis-covert has as full power to dispose" of her separate estate as of any other portion of her property. Nix vs. Bradley, and the cases there cited.
The other words in this will supposed, to indicate the purpose of testatrix to raise a separate estate in the daughter, "not subject to the debts of her husband or any other person,” — do not necessarily imply the intention to exclude the husband. If the clause be read, “ not subject to the debts of her husband,” without the addition of the latter words "or any other person,” which greatly increase the doubtfulness of the intent, it would still have been very equivocal that the testatrix intended more than to give' proj)erty without its necessary incident of liability for debts, to him who should become by the fact of marriage the substitute or successor of the express donee. Such a condition in a gift to a man or to a woman while sole, is void as utterly inconsistent with the nature of the estate given. Brandon vs. Robinson, 18 Ves. 429; Heath vs. Bishop, 4 Rich. Eq. 46. In Rivers vs. Thayer, 7 Rich. Eq. 136, we held that the equitable estate of a husband in property settled to the joint use of himself and wife, and so as not to be liable for his debts, was nevertheless liable to his creditors. In Weatherford vs. Tate, 2 Strob. Eq. 27, the testatrix bequeathed certain slaves respectively to her two married daughters Charlotte and Harriet, and in another clause of her will, said: “ all the property which I have given to my two daughters Charlotte Weatherford, and Harriet Tuttle, I give to them during their natural lives, and after their death to go to the lawful heirs of their bodies; no sale made by either of their husbands shall be valid, unless by the consent of one or both of my executors, and thus my executors have power to prevent such property being moved off the State.” Chancellor Johnston in the circuit decree said: “ there can be no question that Harriet Tuttle took an absolute estate in the slaves, and *31 that ber husband's marital rights attached, investing him with power to dispose of them as he pleased. The bequest is to Harriet Tuttle for life, and the limitation over is to the lawful heirs of her body: and, judging apart from the terms of the will, I have no doubt there was in the mind of the testatrix a desire to secure to her daughter a life interest free from the control of her husband, and that the property at her death should go over, to the issue of her body living at her death; but in Myers vs. Pickett, 1 Hill Ch. 37, it was held that a bequest of chattels to one for life, and then to the heirs of her body, vested an absolute estate in the first taker, on the ground that the limitation over was too remote ; and that is this case. The provision that the slaves should not be removed out of the State, nor sold by the husband, is not a condition, because there is no forfeiture or penalty attached to it, and is utterly inconsistent with the general right of property, and can only operate as a command or order that the property should not be removed or sold, which the party might obey or not at his pleasure.” The Court of Appeals by Johnston, Ch., affirmed this decree and declared their satisfaction “with the view taken by the Chancellor.” Now surely an inhibition of the husband’s power to sell or remove a chattel given to his wife affords a much stronger implication of intention to exclude marital rights, than a mere general declaration that if the donee should be taken in marriage a chattel given to her should not be liable for a husband’s debts. I approve the decision of Nix vs. Bradley, that terms clearly excluding the dominion and control of a future husband over chattels given to his wife while sole, equivocally for her sole use, confer on her a separate estate as to such of the chattels as remain at the marriage; but restriction of the right of a husband to charge or incumber such chattels is the most equivocal of all limitations of his rights and powers.
But the desire of the testatrix in the will in question is not simply that the chattel given to her daughter shall not *32 be liable for tbe debts of a future busbaud, but it is tbat tbe chattel shall not be liable for tbe debts of a husband “ or any other person.” Tbe daughter was then unmarried, and tbe natural construction of tbe clause is tbat tbe property is to be exempt from liability for tbe debts of tbe daughter or any one else, and affords Another instance of tbe many attempts to give property without its necessary incidents.
In Massey vs. Parker, 2 Myl. and Ke. 174, a testatrix bequeathed tbe interest of certain moneys to two unmarried grand-daughters for life, and directed tbat this interest should be “for and under their sole control, and tbat their mother shall have no control over this propertyand it was adjudged that no separate estate was given to the grand-daughters in exclusion of husbands, and that tbe control of the mother only was intended to be prevented. If tbe direction bad been simply tbat tbe property should be “ under the sole control” of the grand-daughters, the decision must have been different; but the reference to the mother pointed and limited the meaning of sole control by the donees. This case has been impeached in some respects, but not as to this point. So here, if the property had been declared exempt from liability for the debts of a future husband alone, it might have been plausibly urged that one of bis characteristic powers as owner had been excluded,- involving a general exclusion of his marital rights; but when the property is declared exempt from the debts of all owners, it seems to be a bald attempt to give in fee, and still limit the inherent rights of the owners.
In my opinion the argument for a separate estate in this case acquires not much additional force by considering conjointly the particulars which separately are inadequate to create such estate by necessary implication. The slave is given to the daughter “ to be hers only,” that is, she is to be the single proprietor, and it is “ not to be subject to the debts of her husband or any other person,” tbat is, she or any one in her right may enjoy the property and yet not *33 incur tbe responsibilities of an owner imposed by law; and, taken altogether, tbe clause means that tbe donee shall have all tbe benefits without tbe risks of bolding this property. I am unable to perceive that “ tbe intention to exclude tbe husband is clearly expressed or arises by necessary implicationand I apprehend that tbe present decision will be regarded by tbe profession as overruling Weatherford vs. Tate, and as impinging on tbe doctrines pronounced by tbe Court of dernier resort in Wilson vs. Bailer; with both of which judgments I am content.

Decree reversed.